# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

KENNETH DWIGANS,

   Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.

Case No. 1:17-cv-454

Bowman, M.J.

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Dwigans filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled.[1] *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents argues that the Defendant's determination is not supported by substantial evidence for two reasons. As explained below, I find no error, and therefore conclude that the ALJ's finding of non-disability should be AFFIRMED.

### I. Summary of Administrative Record

On October 16, 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of November 10, 2010 based upon a combination of physical and mental impairments allegedly caused by fibromyalgia, chronic fatigue syndrome, and several other ailments. After Plaintiff's applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

---

[1]The parties have consented to disposition by the undersigned magistrate judge pursuant to 28 U.S.C. §636(c).

1

On August 4, 2016, an initial hearing was held in Cincinnati, Ohio before ALJ Anne Shaughnessy. (Tr. 34-71). Represented by counsel, Plaintiff appeared and gave testimony, as did an impartial vocational expert ("VE"). On August 17, 2016, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 147-159). Shortly thereafter, however, the Appeals Council vacated the ALJ's decision based upon two errors: (1) despite the entry of new counsel shortly before the administrative hearing, the record did not reflect any ruling on new counsel's motion for a continuance or postponement of that hearing;[2] and (2) the ALJ's written decision contained no reference or analysis of an exhibit reflecting a 100% disability rating from the Department of Veterans Affairs, in violation of SSR 06-03p. (Tr. 167-168).

On February 2, 2017, ALJ Shaughnessy convened a second evidentiary hearing, at which Plaintiff again appeared with counsel and gave testimony. A new VE also testified. (Tr. 72-102). On February 23, 2017, the ALJ issued her decision, again concluding that Plaintiff is not disabled. (Tr. 13-27). The Appeals Council denied further review, leaving the ALJ's 2017 decision as the final decision of the Commissioner.

Plaintiff was just 25 years old on his alleged disability onset date and remained a younger individual at the time of the ALJ's 2017 decision. He testified that he has a college degree and remained in the Air Force until he obtained a medical discharge. While in the military, he performed semi-skilled and skilled work with heavy equipment, as well as various jobs at the medium and very heavy levels of exertion. He also worked at a light level of exertion as a property manager.

---

[2]On remand, the ALJ explained that she had denied the request for a continuance based on the fact that new counsel still had three weeks to prepare for the hearing, but acknowledged that she had neglected to make that ruling on the record. (Tr. 13).

During his period of alleged disability, Plaintiff testified that he married and became a father. At the time of the second hearing, his son was eight months old. Plaintiff, his wife, and his infant son live on a 54-acre tree farm. (Tr. 54).

The ALJ determined that Plaintiff has the following severe impairments: "fibromyalgia, discoid lupus, degenerative disc disease, chronic fatigue syndrome, depression, and anxiety." (Tr. 16). However, none of those impairments meets or equals any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*) Instead, the ALJ determined that Plaintiff retains residual functional capacity ("RFC") to perform sedentary work with the following restrictions:

> [H]e can never climb ladders, ropes, or scaffolds. He can occasionally kneel, crouch, and crawl. He should avoid concentrated exposure to temperature extremes, wetness, humidity, vibration, fumes, odors, dusts, and gases. He can understand and remember and carry out simple and occasional complex instructions. He can relate on a superficial basis. He can never have public contact. He can work in a setting in which duties are routine and predictable and without demands for fast pace or high production.

(Tr. 18). Based on the testimony of the vocational expert, the ALJ determined that although Plaintiff cannot perform any of his past work, he still can perform unskilled jobs that exist in significant numbers in the national economy, including the representative occupations of assembler, packer, and inspector. (Tr. 26).

In his Statement of Errors, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because: (1) she failed to provide "good reasons" for declining to give controlling weight to two of his treating physicians, Drs. Chunn and Mina; and (2) she should have given greater weight to the disability award made by the Veteran's Administration in accordance with the Appeals Council's remand order and SSR 06-03.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

4

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's decision should be reversed because it is not based on substantial evidence in the record as a whole, based upon an alleged failure to give good reasons for rejecting the opinions of two of his treating physicians, and/or for failing to adequately consider the prior disability award made by the VA. I find no error, and instead conclude that the ALJ's decision is substantially supported.

5

### 1. Weight Given to Plaintiff's Treating Physicians

The administrative record in this case is voluminous, although it contains many duplicate records. Because Plaintiff was in the military, much of his treatment during the relevant period was provided by the VA. The ALJ reviewed multiple medical opinions by VA physicians, and gave the greatest weight to several of them, but Plaintiff focuses his assertion of error on the ALJ's assessment of the opinions of two private treating physicians, Drs. Chunn and Mina. Plaintiff further criticizes the ALJ's failure to adopt functional limitations noted by a physical therapist during a functional capacity evaluation ("FCE").

Until March 27, 2017, the Social Security Agency had established an "automatic hierarchy for treating sources, examining sources, ...[and] nonexamining sources," with the opinion of treating sources automatically entitled to the greatest weight. *See* 82 FR 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017). Thus, the long-standing regulation regarding treating physicians provided: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it <u>controlling</u> weight." 20 C.F.R. §404.1527(c)(2) (emphasis added); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner also was required to provide "good reasons" if the Commissioner did not give controlling weight to the opinion of a treating physician. *Id.*

Effective March 27, 2017, many long-standing regulations have been significantly revised or rescinded, with the old hierarchy discarded. For example, a new rule set forth in 20 C.F.R. §404.1520c entirely replaces the treating physician rule previously set forth

6

in 20 C.F.R. § 404.1527.  On May 8, 2017, the Appeals Council declined further review under "the regulations and rulings in effect as of the date we took this action." (Tr. 1). Thus, this Court first must briefly examine whether the treating physician rule applies to Plaintiff's claim.  Although some revisions apply to claims that remained pending at the administrative level on March 27, 2017, the Commissioner has made clear that the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845.  Plaintiff filed the instant claim in 2015; therefore, the prior "treating physician rule" and related SSRs and case law continue to apply to this case. *Accord, Glanz v. Com'r of Soc. Sec.*, 2018 WL 3722318 at n. 5 (N.D. Ohio July 17, 2018).  Having determined that the well-established rule remains applicable, I turn to the ALJ's analysis of the opinions of Drs. Chunn and Mina.

On September 5, 2014, Dr. Chunn opined that "[d]ue to fatigue [and] cognitive impairments, [Plaintiff] is unable to sustain normal job duties/schedules." (Tr. 2202).  On the same date, Dr. Chunn completed a multitude of VA forms for Plaintiff opining on the alleged disabling impact of various conditions.  (Tr. 2167-2202).  In addition, on June 16, 2016, Dr. Chunn completed a Medical Assessment of Ability To Do Work Related Activities (Physical), and opined that Plaintiff could not perform a full range of sedentary work.  Specifically, he opined that Plaintiff could stand and walk for only 1 hour in an 8-hour day, for 15 minutes at a time, could sit for no more than 6 hours per day, for a total of 30 minutes at a time, and could never climb, kneel, crouch, or crawl.  Dr. Chunn further opined that Plaintiff could only occasionally stoop and balance, with occasional limitation in reaching, handling, and pushing/pulling, and limitation with exposure to heights, moving machinery, and temperature extremes.  Importantly, Dr. Chunn also opined that Plaintiff

7

would be "off task" between 50 and 75% of the workday and would miss work a minimum of four days per month. (Tr. 2763-2768). Dr. Chunn's opinions concerning all of Plaintiff's limitations were work-preclusive.

Although acknowledging Dr. Chunn's status as a treating physician, the ALJ declined to give all of his opinions controlling weight, and instead gave them only partial weight. (Tr. 23). Setting forth all relevant regulatory considerations, the ALJ reasoned:

> In this case, the undersigned accepts the limitation to sedentary work; however, Dr. Chunn's limitations, including his postural limitations, appear somewhat extreme in light of the medical evidence, including his own treatment records, which typically show mild findings (14F, 16F). In addition, Dr. Chunn admitted he was not directly treating the claimant at the time of his analysis.
>
> Little weight is given to the assessment…dated September 5, 2014 in which [Dr. Chunn] opined, "Due to fatigue [and] cognitive impairments, [Plaintiff] is unable to sustain normal job duties/schedules" (11F/44). Dr. Chunn failed to provide specific evidentiary support for this assessment. In addition, such assessment appears to be a finding of disability, which is reserved to the Commissioner. This assessment is also inconsistent with the majority of physical findings of record.

(Tr. 23-24).

The ALJ also declined to give the opinions of Plaintiff's treating rheumatologist, Dr. Rina Mina, controlling weight, giving her opinions little weight. (Tr. 25). Like Dr. Chunn, Dr. Mina completed a physical RFC form dated February 3, 2017 in which she opined the Plaintiff could perform less than a full range of sedentary work. Specifically, Dr. Mina stated that Plaintiff would be off task 35-50% of the workday, and absent a minimum of 4 days per month. (Tr. 2894-95). However, the ALJ also rejected Dr. Mina's opinions, writing:

> Dr. Mina failed to provide evidentiary support for her assessment and the limitations provided appear extreme in light of the majority of examination findings, including her own treatment records (26F), and claimant's reports of functioning.

8

(Tr. 25).

The ALJ's evaluation of the two referenced opinions is supported by substantial evidence in the record as a whole. A treating physician's opinions are entitled to controlling weight, but only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). In the ALJ's analysis, she explained why she believed that neither Dr. Chunn's nor Dr. Mina's opinions were entitled to controlling weight – because neither treating source's opinions were well-supported by their own treatment records, and both of their extreme limitations were inconsistent with the majority of the record as a whole. Further, as the ALJ pointed out, Dr. Chunn was not directly treating Plaintiff for his fibromyalgia or chronic fatigue syndrome at the time he submitted his opinions. (Tr. 2763, "I do not actively manage <u>any</u> of his direct care." (emphasis added)).

Plaintiff argues that the ALJ's stated reasons were inadequately articulated, because (in Plaintiff's view) the ALJ did not cite to enough examples of inconsistencies or specifically explain precisely which of Dr. Chunn's limitations she was rejecting as too extreme. However, neither regulations nor case law impose any formulaic requirement on how many sentences an ALJ must use to explain why a particular treating physician's RFC opinions are not entitled to controlling weight, so long as the analysis as a whole is susceptible to review and states "good reasons." In this case, a simple comparison of the ALJ's RFC and Dr. Chunn's RFC reveals the limitations that the ALJ declined to adopt. More importantly, the ALJ thoroughly analyzed the medical records as a whole, which – as stated – were extensive and included multiple medical opinions besides those of Drs. Chunn and Mina.

9

With respect to the ALJ's analysis of Dr. Mina's opinions, Plaintiff additionally contends that the ALJ erred by criticizing the lack of "evidentiary support" for those opinions, because Plaintiff's severe impairments of fibromyalgia and chronic fatigue syndrome very often yield few "objective" findings. However, the ALJ was not focused on the lack of objective findings to support Plaintiff's diagnoses, but instead, found Dr. Mina's opinions to be unsupported by her own treatment records, examination findings, and Plaintiff's subjective reports of his functioning throughout the record. (Tr. 25, citing Tr. 2876-92; see also Tr. 20-21, noting multiple treatment records reflecting that Plaintiff's conditions were improved with medications, a TENs unit, and other conservative treatment, and other records in which he denied significant issues, reported staying "fairly active," and appeared in no acute distress).

Plaintiff relies chiefly on *Rogers v. Com'r of Soc. Sec.*, 486 F.3d 234, 245 (6th Cir. 2007), a fibromyalgia case in which the appellate court found it error for an ALJ to fail to give controlling weight to the opinion of a claimant's treating physician concerning his pain limitations. However, *Rogers* exemplified earlier cases in which ALJs sometimes seemed hesitant to identify fibromyalgia "as a severe impairment, and this hesitancy, in turn, influenced the ALJ's weighing of the treating physician evidence." *Id.* at 243. Thus, in *Rogers* the ALJ failed to discuss the tender points standard for fibromyalgia and did not recognize consistent and extensive documentation of "continuous and frequent" treatment by two treating physicians of "ongoing complaints of intense pain and stiffness throughout Rogers' body as well as fatigue." *Id.* at 244.

In the decade since *Rogers*, the case law reflects growing understanding of fibromyalgia and chronic fatigue syndrome by both the Social Security Administration and the courts. In 2012, the Social Security Administration published SSR 12-2p to provide

10

additional guidance in the evaluation of fibromyalgia. 2012 WL 3104869 (July 25, 2012. See 79 Fed. Reg. 18752, 2014 WL 1371245 (April 3, 2014). As SSR 12-2p explains: fibromyalgia "is a common syndrome." 2012 WL 3104869 at *2. In fact, most people with fibromyalgia suffer less than disabling limitations. *See Vance v. Com'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008). On April 2, 2014, SSR 14-1p became retroactively effective, replacing SSR 99-2p and clarifying SSA policy on the evaluation of chronic fatigue syndrome.[3]

Objective evidence is not wholly irrelevant merely because a claimant suffers from a condition like fibromyalgia or chronic fatigue syndrome. SSR 12-2p requires "sufficient <u>objective evidence</u> to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from perform any substantial gainful activity." 2012 WL 3104869 at *2 (emphasis added). SSR 14-1p similarly emphasizes that "there must be medical signs or laboratory findings before we may find that a person has" chronic fatigue syndrome. 2014 WL 1371245 at *4. With respect to both conditions, it is the type of "objective evidence" or "signs or laboratory findings" that may vary, not their existence. Thus, evidence from the treating physician must document "a physical exam" as well as medical history, and treatment notes must reflect "whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." 2012 WL 3104869 at *2; *see also* 2014 WL 1371245 at *4-5. In addition, both SSR 12-2p and SSR 14-1p make clear that "[i]f objective medical evidence

---

[3]SSR 14-1 references fibromyalgia as a condition that sometimes co-occurs with CFS, but does not abrogate SSR 12-2p or modify the process for determining whether a person with CFS or fibromyalgia is disabled under the Social Security Act.

11

does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." 2012 WL 314869 at *5; 2014 WL 1371245 at *7.

Here, the ALJ appropriately reviewed the entirety of the record. For example, even though Plaintiff testified that he had to give up trying to be a full-time caregiver and hire child care just 2-3 weeks after his wife returned to work, he also testified that he continues to help care for his infant son, albeit no longer on a full-time basis. He has no difficulties with self-care, and reported driving, mowing his lawn, performing pond maintenance, assisting with household chores, grocery shopping, taking his dog out 3-5 times per day, and farming. (Tr. 51-56, 382-90; *see also* Tr. 19). In January 2014, he reported doing some remodeling in his home. (Tr. 905). In March 2016, he reported doing aerobic exercise and additional home improvement work on his kitchen, involving plumbing, electrical, and wall demolition. (Tr. 2266). In addition, although he is unable to engage in his hobbies as frequently as he once could, he still enjoys researching, gardening/landscaping, fishing, and hunting. (Tr. 19, 22; see also Tr. 2349, 2442-63). In February 8, 2016, he reported he was involved in "volunteer works." (Tr. 22, citing Tr. 2241). He reported doing daily exercises, walking his dog when the weather permits, and taking care of his 50 acre farmland. (*Id.*) His primary form of exercise is weight lifting (frequency rarely). (*See, e.g.*, Tr. 2349, 2441, 2443, 2446, 2448, 2450).

The ALJ explained in portions of her opinion why not only Plaintiff's daily activities, but his treatment history, examination findings, imaging studies and overall medical

opinion evidence (besides the unsupported opinions of Drs. Chunn and Mina) undermined his allegations of work-preclusive limitations. The ALJ's analysis is consistent with SSR 12-2p and 14-1p for both fibromyalgia and chronic fatigue syndrome. *Accord Dunn v. Com'r*, 2016 WL 4194131 (S.D. Ohio July 15, 2016) (rejecting claim of error where treating physician's records reflected only benign findings, were devoid of even subjective complaints that would support extreme functional limitations based on fibromyalgia and were inconsistent with other evidence of record).

Plaintiff points out that the four medical opinions opining that Plaintiff could continue to perform light or sedentary work, on which the ALJ most heavily relied, were dated December 2012, December 2013, and January 2014. (Tr. 24; *see also, e.g.*, Tr. 918 "the veteran would be limited from heavy physical labor but not from sedentary or light physical work."). He argues that even though all four opinions were from VA sources, they predated a later (September 2015) determination by the VA that he was entitled to a disability award. However, Plaintiff is claiming continuous disability under the social security regulations from November 2010 through the date of the ALJ's decision. The referenced VA opinions all fell within that relevant period. The fact that the VA later chose to award Plaintiff benefits does not invalidate the prior opinions or require the ALJ to ignore all other substantial evidence used to support her non-disability determination.[4]

In addition to his general criticism of the ALJ's rejection of the most limiting RFC opinions offered by Drs. Chunn and Mina, Plaintiff argues that the functional capacity evaluation completed by physical therapist Cynthia Lear was consistent with those two physician opinions. (Tr. 2770-73). Again, I find no error.

---

[4]Even after the award was made, VA records reflect "improved activity level" with his physician advising him to engage in aerobic exercise of up to one hour per day. (Tr. 2255).

13

On July 11, 2016, Ms. Lear conducted a limited FCE over the course of 1.25 hours based upon stated diagnoses of fibromyalgia and chronic pain disorder and a referral from Dr. Mina. She noted that Plaintiff's reported back pain "was a limiting factor throughout the evaluation activities," noting that Plaintiff minimized his movements, including keeping his arms close to his sides, based upon his goal of minimizing his perceived risk of "throwing my back out." (Tr. 2770). Ms. Lear noted that Plaintiff told her that he is 100% totally and permanently disabled based on "11 conditions," but more cautiously "recommended that results of testing today be reviewed by his physician and corroborated with any diagnostic test results. <u>And that the extent of pain be substantiated with the diagnostic test results</u>." (*Id.*, emphasis added)

In addition to pointing out that Plaintiff limited his movements out of concern he might risk throwing his back out,[5] Ms. Lear was careful to note that the majority of the report was based on the information provided to her from Plaintiff. Based on the FCE as performed, she observed that Plaintiff's physique was "[m]uscular, well toned," but opined:

> <u>At this time</u>, [Plaintiff] is not likely to be physically able to sustain employment as a heavy equipment operator as he was doing previously. He may be able to handle part time <u>at least</u> work in a position which allows position changes at will, alternates between 10-15 minute intervals of sitting or being up moving around, and where he can work with his arms relatively close to his sides.

(Tr. 2771-2772, *emphasis added*; *see also* Tr. 24).

The ALJ correctly noted that Ms. Lear was not an acceptable medical source, but nonetheless considered her opinion in the context of the record as a whole. (Tr. 24). I

---

[5]Plaintiff reported to Ms. Lear that his pain level was higher than usual on the date of testing, for unknown reasons. (Tr. 2772).

14

find no error in the ALJ's decision to give the FCE only partial weight based on the limited information on which the report was based, including Plaintiff's subjective complaints. Ms. Lear emphasized that her results were based in part upon Plaintiff's reports and repeatedly recommended that testing be substantiated with diagnostic test results and that Plaintiff obtain more information from his physicians delineating his condition. (*Id.*)

In short, substantial evidence (as well as SSR 12-2p, SSR 14-1p and case law) supports the ALJ's decision to discount the FCE report and to give Dr. Chunn's and Mina's RFC opinions only "partial weight" and "little weight" respectively. *See generally, Cunningham v. Com'r of Soc. Sec.*, 2015 WL 4514540 (S.D. Ohio July 24, 2015) (rejecting asserted error regarding ALJ's failure to include additional limitations relating to fibromyalgia); *Myers v. Com'r of Soc. Sec.*, 2015 WL 4651240 (S.D. Ohio July 15, 2015), adopted 2015 WL 4653137 (August 5, 2015) (affirming rejection of treating physician's extreme functional limitations, despite evidence of disease similar to fibromyalgia); *Griffin v. Com'r of Soc. Sec.*, 2014 WL 2442109 (S.D. Ohio May 30, 2014) (rejecting greater functional limitations despite severe fibromyalgia).

### 2. Evaluation of VA Disability Award

Plaintiff's second claim is that the ALJ erred in evaluating his disability award from the VA. As the Appeals Council pointed out in directing remand, the ALJ's first opinion inexplicably failed to reference that September 2015 award, despite its inclusion in the administrative record. (Tr. 2117-2121). On remand, the ALJ corrected that error of omission with the following discussion:

> The undersigned…notes that the VA provided an assessment of the claimant dated September 28, 2015 which found a 100% disability based on the claimant's fibromyalgia and chronic fatigue syndrome (9F). Little weight is given to this assessment. First, a finding of disability is one reserved to the Commissioner. In addition, this assessment appears inconsistent with the medical evidence of record as a whole, including the

15

> examination findings and diagnostic tests detailed above, as well as reports from treating sources indicating the claimant remains capable of sedentary work.

(Tr. 24-25).

Plaintiff now contends that the ALJ's analysis fails to comply with SSR 06-03, because the ALJ did not explain in greater detail the consideration she gave to the VA's award decision. I disagree. Pursuant to 20 C.F.R. § 404.1527(d), the disability determination under social security regulations is reserved to the Commissioner. Even though the ALJ's analysis of the VA's disability award was brief, primarily noting the inconsistency of the VA award with evidence "detailed above," the ALJ's summation of the record and non-disability opinion as a whole is well-reasoned and substantially supported.

As referenced above, Plaintiff was medically retired from military service based upon the fact that his medical restrictions, including restricting sun exposure and weight lifting restrictions, prevented him from performing his military duties. (Tr. 2308, 2318, noting Plaintiff's Commander finds his limitations "drastically limit[] his ability to perform his duties as most of them are outdoor activities, currently reassigned to administrative duties indoors…. He is unable to deploy and fulfills a critical position restricting the ability to accomplish the unit's mission. Recommendation is for separation."). Plaintiff sought a disability award from the VA, and ultimately obtained that award after several initial denials and/or findings of lesser limitations. (*See, e.g.*, Tr. 2324).

While the VA proceedings were not set forth in detail by the ALJ, the final VA award of 100% disability reflects that it was a reconsideration of prior adverse VA decisions dated February 25, 2015 and June 18, 2015, which were based upon a lack of evidence to support a diagnosis of fibromyalgia. (Tr. 2119). Plaintiff was able to alter the VA's initial

16

adverse decision on reconsideration by seeking out an opinion from a private physician who diagnosed fibromyalgia and completed benefits questionnaires that showed a more conclusive diagnosis.[6] According to the VA's analysis of the evidence on reconsideration, "the evidence supporting a diagnosis is in equipoise." (Tr. 1119). The award explains:

> Although the specific documentation may or may not be present in your claims file for the VA examiner to review, there is nothing to dispute the diagnosis [of fibromyalgia] made by your private provider, and the disability benefits questionnaire completed by your private provider appears to be complete and made with sound medical judgment. Therefore, your claim is considered to be reopened, and *we have resolved all benefit of the doubt in your favor* to grant service connection for fibromyalgia.

(Tr. 1119, emphasis added).

Similar language appears with respect to the VA's initial analysis of Plaintiff's chronic fatigue syndrome and the VA's analysis on reconsideration. Two prior denials by the VA were reopened and reconsidered based upon Plaintiff's submission of new evidence from his private physician that resulted in "a diagnosis…in equipoise," again resulting in the resolution of any doubt in Plaintiff's favor. With respect to Plaintiff's chronic fatigue syndrome, however, the award continued to reject Plaintiff's claim of 100 percent disability for that impairment alone:

> An evaluation of 60 percent is assigned from September 18, 2014. …Your private disability benefits questionnaire indicates that your chronic fatigue syndrome is so severe to restrict routine daily activities almost completely. However, *this is not supported by the evidence of record, to include VA examinations and VA treatment records, that show that you are able to maintain daily activities.* Therefore, we have determined that your condition restricts daily activities less than 50 percent of the pre-illness level, as noted on the February 2015 examination, to warrant a 60 percent evaluation.

---

[6]The undersigned infers that the private physician referenced in the award was Dr. Chunn. On May 11, 2015, Plaintiff asked Dr. Chunn to review his military records along with his diagnoses in order to complete VA records. Dr. Chunn responded by stating he was willing to do so based upon his fee schedule of $100 per hour. Dr. Chunn later stated that he had reviewed the records and was willing to "make a statement that you do indeed have those conditions, but cannot make an opinion as to the cause or service connection of the conditions." (Tr. 2455; *see also* Tr. 2459, stating "I will let the pt know which conditions I can comment on and what the fee will be associated with the completion of the forms.").

(Tr. 2120, emphasis added). Plaintiff was awarded a 100% disability award based upon specific VA regulations that combined the impact of his chronic fatigue syndrome and fibromyalgia for a service-related disability award.

There is no dispute that the standards employed by the VA in determining Plaintiff's eligibility for a disability award differ significantly from the standards that apply under the Social Security Act. On the record presented, I find no error in the ALJ's articulation of the basis for discounting the VA award, and find her analysis of that award as "inconsistent with the medical evidence of record as a whole" to be substantially supported under applicable social security regulations.

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*  
Stephanie K. Bowman  
United States Magistrate Judge